UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APRIL COOPER,

    Plaintiff,

vs.                                                              Case No.: 8:08-cv-386-T-33MAP

OLD WILLIAMSBURG CANDLE CORP.,

    Defendant.
_____/

## ORDER

Defendant, Old Williamsburg Candle Corporation ("OWC") has moved for summary judgment (the "Motion," Doc. 50) on April Cooper's claims of strict products liability, breach of implied warranty of merchantability, and negligence. While Cooper has responded to the Motion only on the claim of strict liability, the Court will fully consider and rule on each of OWC's arguments.

This action arises from an accident in June 2007, in which Cooper was burned by a citronella candle manufactured by OWC. Cooper suffered serious burns to 11% of her body. Cooper sued OWC for strict products liability, breach of implied warranty of merchantability, and negligence. In its Memorandum in Opposition (Doc. 55), OWC does not dispute Cooper's basic statement of facts but instead argues that the facts fail to support any claim for products liability.

## I. Factual and Procedural Background[1]

The undisputed facts describe an accident occurring in June 2007. Cooper and a friend, Cederick Turner, were sitting under Cooper's carport with a lit citronella candle. The candle consisted of citronella scented paraffin and wax contained within a metal bucket-shaped container. Between two and four years before the accident Cooper purchased the candle and stored it, uncovered, on a shelf in her carport. Although Cooper does not remember where she purchased the candle, she did not purchase the candle directly from OWC. A label affixed to the bottom of the metal bucket warned against attempting to extinguish the candle with water. Cooper never read the warning label on the candle. To ward off insects, Cooper burned the candle on "quite a few" occasions. At the time of the accident, "a little over half" of the wax remained.

On the evening of the accident, Cooper and Turner sat on lawn furniture under the carport. They socialized for several hours with the lit candle between them on the cement floor. They then decided to end their evening, and Cooper attempted to blow out the candle. However, the candle wick failed to extinguish. Turner went into the house and drew water from the tap into a pyrex measuring cup.

---

[1] Consistent with summary judgment standards, the facts stated are either undisputed or stated in a light most favorable to Cooper. See White v. Mercury Marine Div. of Brunswick, Inc., 129 F.3d 1428, 1430 (11th Cir. 1997).

In an attempt to extinguish the candle, Turner poured between one-quarter to one-third of a cup of water on the candle. The candle began "snapping and popping" but still did not extinguish. In fact, the candle began to burn more "aggressively" after Turner added the water. Turner decided to attempt to smother the flame and went to his car to find a suitable cover. Cooper remained near the candle and noted that the candle continued to burn "aggressively." The candle then "exploded" and spewed flame and hot wax and hot oil over Cooper's lower body causing serious burns to 11% of her body. Cooper was unable to work and incurred hospital bills in treating her injuries. Cooper subsequently sued OWC alleging products liability. Following discovery, OWC has moved for summary judgment.

## II.     Summary Judgment Standard

A motion for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A conflict in substantial evidence must exist to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989). Substantial evidence is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of

impartial judgment might reach different conclusions." Id. at 1045 (internal citations omitted).

The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex, 477 U.S. at 323. For summary judgment purposes, the court examines the evidence in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). After the moving party properly demonstrates the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings to designate specific facts showing that a genuine issue exists for trial. Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997); see also LaRoche v. Denny's, Inc., 62 F.Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear. . .that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A court is not obliged to deny summary judgment for the moving party

when the evidence favoring the non-moving party is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 249. The existence of a scintilla of evidence in support of the non-movant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Id. at 252. A general denial unaccompanied by any evidentiary support will not suffice. See generally Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991).

### III. Product Defect

Cooper's complaint alleges claims for strict products liability, breach of implied warranty of merchantability, and negligence. To sustain a claim of defective product, whether alleging strict products liability, implied warranty of merchantability, or negligence, a plaintiff must demonstrate that (1) a defect existed in the product, (2) the defect caused the injury, and (3) the defect in the product existed at the time the product left the possession of the manufacturer. Barrow v. Bristol-Myers Squibb, Co., 1998 WL 812318, *27 (M.D. Fla. Oct. 29, 1998); Pulte Home Corp., Inc. v. Ply Gem Indus., Inc., 804 F.Supp 1471, 1478 (M.D. Fla. 1992) (quoting Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981)). In addition to demonstrating a defect as described above, the plaintiff must establish the elements of each

individual claim for strict products liability, breach of implied warranty and negligence.

### A. Strict Products Liability

Pursuant to strict products liability, "a product may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning." Ferayorni v. Hyundai Motor Co., 711 So.2d 1167, 1170 (Fla. 4th DCA 1998) (citing West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976)). Neither her complaint nor her response to OWC's motion for summary judgment identifies whether Cooper alleges design defect, manufacturing defect, or inadequate warning as a basis for the strict products liability claim. In fact, Cooper's response relies only on the inference permitted by Cassisi. Despite Cooper's inadequate response, the Court will consider each basis in determining whether Cooper's strict products liability claim can survive summary judgment.

#### 1. Manufacturer's Defect

For the purposes of manufacturer's defect only, Cassisi permits a plaintiff to establish an inference of defect sufficient to send the case to the jury by showing that the malfunction occurred during normal usage of the product. Cassisi, 396 So.2d at 1148.

The Cassisi inference applies when circumstantial evidence demonstrates that the malfunction occurred during normal operation of the product. Id. "[W]hen a product malfunctions during normal operation, a legal inference. . .arises, and the injured plaintiff thereby establishes a prima facie case for jury consideration." Id. "[T]he normal use requirement from Cassisi is based on the consumer-expectations test from the Restatement of Torts (Second), which asks whether 'the ordinary consumer's expectations [are] frustrated by the product's failure to perform under the circumstances in which it failed.'" Edic *ex rel.* Edic v. Century Products Co., 364 F.3d 1276, 1285 (11th Cir. 2004). Whether the use qualifies as normal is generally a question of fact for the jury. Id.

Cooper argues that because the candle was used as intended the Cassisi inference is appropriate. Although not clearly stated, the Court assumes that Cooper argues (1) that the candle's defect became apparent not when Turner poured water on the candle but when Cooper was unable to blow the candle out and, in the alternative, (2) that pouring water on a candle neither qualifies as an unintended use nor renders Cooper's use of the candle abnormal. OWC argues that Cassisi doesn't apply because the candle operated as intended until Turner poured water on the candle and pouring water on the candle qualifies as an

7

unintended use. Whether the candle malfunctioned during normal usage or whether Turner's pouring water on the candle was normal are matters for the trier of fact.

At this stage, a plaintiff need only present circumstantial evidence that the product malfunctioned during normal use. Kaplan v. Daimlerchrysler, A.G., 2003 WL 22023315, at *2 (11th Cir. Aug 1, 2003). OWC has failed to demonstrate that no genuine issue of material fact exists with regard to whether the circumstances amount to normal use of the candle. Cooper's testimony, Turner's testimony and the evidence submitted by OWC demonstrate that material issues of fact exist about whether the candle malfunctioned during normal use. Accordingly, Cooper is entitled to the Cassisi inference. However, the Cassisi inference only aids a plaintiff in establishing a *prima facie* case for jury consideration. Pantages v. Cardinal Health 200, Inc., 2009 WL 2244536, at *2 (M.D. Fla. July 27, 2009). The inference neither entitles the plaintiff to summary judgment nor does it shift the burden to the defendant. Id. In determining whether OWC is liable for a defective product, the trier of fact will need to consider, in addition to whether the product malfunctioned during normal usage, other elements such as the amount of time between the sale and injury, the product's age, the length of the product's use, the severity of its use, the state of its repair, its expected useful life and whether it was subjected to any abnormal operations. Cassisi, 396 So.2d 1152.

### 2. Design Defect

Cooper offers neither evidence nor legal argument in support of a design defect claim. Cooper's failure to offer expert evidence forecloses any claim based on a design defect. "Design defects must be proven by expert testimony." Alvarez v. General Wire Spring Co., 2009 WL 248264, *4 (M.D. Fla. Feb 1, 2009) (citing Drury v. Cardiac Pacemakers, Inc., 2003 WL 23319650, *4 (M.D. Fla. June 3, 2003)); see also Savage v. Danek Medical, Inc., 31 F.Supp.2d 980, 983-84 (M.D. Fla. 1999) (citing to multiple cases).

Cooper does not directly respond to OWC's design defect argument. Cooper's only claim is that the candle's malfunction occurred during its normal operation. Although a product's malfunction may be caused by a design defect, when the only evidence a plaintiff proffers is that a product malfunctioned during normal operation, "it will be inferred that the defect was one of construction, rather than design, because a malfunction of a product is not a result ordinarily intended by the manufacturer." Cassisi, 396 So.2d at 1146 n.10. Accordingly, to the extent that Cooper alleges a design defect, she is unable to offer any direct evidence of such, and thus fails to meet the burden necessary to survive summary judgment on this issue.

### 3. Inadequate Warning

To demonstrate a products liability claim based on failure to warn, a plaintiff must demonstrate that the failure to warn was the proximate cause of the injury. Pinchinat v. Graco Children's Products, Inc., 390 F.Supp.2d 1141, 1148 (M.D. Fla. 2005). Here, Cooper admits that she never read the warnings on the label. Accordingly, Cooper cannot demonstrate proximate cause. Id. ("Under Florida law, plaintiff's failure to read the warning label extinguishes proximate cause in a failure to warn claim"); Ashby Div. of Consol. Aluminum Corp. v. Dobkin, 458 So.2d 335, 337 (Fla. 3d DCA 1984) (finding that where the plaintiff did not read the instructions on the product the failure to warn could not, as a matter of law, be the proximate cause of injuries); see also Lopez v. Southern Coatings, Inc., 580 So.2d 864, 865 (Fla. 3d DCA 1991) and Alvarez, 2009 WL 248264, at *10 (finding the plaintiff barred from pursuing failure to warn claim where the plaintiff did not read warning on product). Accordingly, to the extent Cooper's claim alleges failure to warn, Cooper fails to meet her burden to survive summary judgment.

### B. Breach of Implied Warranty of Merchantability

To sustain a claim for breach of implied warranty under Florida law, the plaintiff must demonstrate that he is in privity with the defendant. T.W.M. v. Am. Med. Sys., Inc. 886 F.Supp. 842, 844 (N.D. Fla. 1995) (citing Kramer v. Piper

Aircraft Corp., 520 So.2d 37 (Fla. 1988), and stating "[t]he law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant.").

Cooper cannot (and does not attempt to) demonstrate that she is in privity with OWC. Although she does not recall where she purchased the candle, Cooper admits that she did not purchase the candle from OWC. Accordingly, no privity exists between Cooper and OWC. Cooper's claim for breach of implied warranty of merchantability can not survive summary judgment.

### C. Negligence

Negligence may occur at any stage of the design, manufacturing, or marketing process. To prove any products liability claim sounding in negligence, whether negligent design, negligent manufacture, or the negligent failure to provide adequate warnings or instructions, a plaintiff must establish (1) that the defendant owed a duty of care toward the plaintiff, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the product was defective or unreasonably dangerous. Marzullo v. Crosman, Corp., 289 F.Supp.2d 1337, 1342 (M.D. Fla. 2003). The plaintiff has the burden of proof on each element.

As stated above, to survive summary judgment, after the moving party properly demonstrates the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings to designate specific facts showing that a genuine issue exists for trial. Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co., 475 U.S. at 587.

OWC has argued that it breached no duty to Cooper in the design, manufacture, or marketing of the candle. OWC provided evidence to support its argument that it breached no duty to Cooper and that the candle was neither defective nor unreasonably dangerous. However, Cooper has offered neither evidence nor legal argument in support of the negligence claim. Cooper, in fact, never even mentioned her negligence claim in her response to the Motion.

Assuming that OWC owes a duty of reasonable care to consumers like Cooper (whether in the design, manufacture, or marketing of the candle), Cooper must demonstrate that OWC breached that duty, that the breach caused her injuries, and that the candle was defective. Marzullo, 289 F.Supp.2d at 1342. Cooper failed to offer any evidence to support her contention that OWC breached a duty to her or that any such breach was the cause of her injury. Apart from her discussion of the Cassisi inference, Cooper failed to address directly a defect in the

candle. However, neither Cooper's brief nor any analysis found by this Court establishes that the Cassisi inference applies to claims of negligence.

Accordingly, Cooper cannot survive summary judgment on a theory of negligence. Kilpatrick v. Breg, Inc., 2009 WL 2058384 (S.D. Fla. June 25, 2009) (finding plaintiff's "failure to proffer sufficient evidence of causation, an element critical to all of his claims, [ ] necessarily fatal to his efforts to avoid summary judgment").

**IV.     Conclusion**

Accordingly, the Motion (Doc. 50) will be **GRANTED IN PART** and **DENIED IN PART**.

It is therefore

**ORDERED**, **ADJUDGED** and **DECREED** that:

(1)     The Motion (Doc. 50) is **GRANTED** as to Cooper's claims based in breach of implied warranty and negligence;

(2)     Further, the Motion is **GRANTED** as to claims based in strict products liability to the extent the claims allege design defect or inadequate warning; and

(3)     The Motion is **DENIED** as to the claim based in strict products liability that allege manufacturer's defect.

**DONE** and **ORDERED** in Chambers in Tampa, Florida on this 21st day of August 2009.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record